721 P.2d 1310

Kenneth TRUJILLO, Personal Representative of the Estate of Henry Trujillo, Jr., Deceased, Plaintiff-Appellant,

v.

Gilbert TRUJILLO, d/b/a El Nido Supper Club, Defendant-Appellee,

and

Linda W. Treat and Thomas J. Treat, Defendants.

No. 8614.

Court of Appeals of New Mexico.

May 27, 1986.

Gerald A. Hanrahan, Lorenzo A. Chavez, Martin J. Chavez, Albuquerque, for plaintiff-appellant.

Michael A. Griego, Louis E. Valencia, Esquibel, Valencia, Sanchez & Griego, Los Lunas, for defendant-appellee Gilbert Trujillo.

## OPINION

ALARID, Judge.

Kenneth Trujillo (plaintiff), as personal representative of the estate of Henry Trujillo, Jr., appeals the trial court's dismissal of his claim against Gilbert Trujillo (defendant), d/b/a El Nido Supper Club. The issue on appeal is whether a tavernkeeper who unlawfully serves alcohol to an intoxicated patron is civilly liable for injuries suffered by the patron as a result of that act. We hold that defendant is not liable and, therefore, affirm.

## PROCEDURAL BACKGROUND

Plaintiff brought an action for the wrongful death of decedent in Valencia County on January 3, 1985. The pertinent portions of the complaint are as follows:

### II.

That on or about the thirteenth (13th) day of November, 1984, Defendant Gilbert Trujillo d/b/a El Nido Supper Club, knew or should have known that Henry Trujillo, Jr., deceased was intoxicated and notwithstanding the same negligently and in violation of Sec. 60–7A–16 N.M.S.A. (1978) sold or served Henry Trujillo, Jr., a customer, intoxicating beverages on the premises of El Nido Supper Club.

### III.

That at all times pertinent hereto Defendant Gilbert Trujillo d/b/a El Nido Supper Club knew or should have known that Henry Trujillo, Jr. would leave El Nido Supper Club by foot or motorized vehicle and by virtue of his intoxication present a danger to himself and others and notwithstanding the same, wantonly and with gross disregard for Henry Trujillo, Jr.'s, safety and that of the public and knowing that Henry Trujillo, Jr., was intoxicated, served or sold Henry Trujillo, Jr., intoxicating beverages.

### IV.

That Henry Trujillo, Jr., did wander on foot from the El Nido Supper Club onto the Highway and because of his intoxicated state did stand in the path of a vehicle proceeding north on U.S. Highway 85 and was struck by said vehicle causing him severe bodily injury resulting in his death.

### V.

That as a proximate result of Defendant's negiligence [sic], the Estate of Henry Trujillo, Jr., incurred funeral expenses, ambulance expenses and suffered loss of income in an amount as yet not ascertained but believed to be in excess of two hundred and fifty thousand dollars ($250,000.00).

On January 25, 1985, defendant filed a motion to dismiss for failure to state a claim upon which relief could be granted. NMSA 1978, Civ.P.R. 12(b)(6) (Repl.Pamp. 1980). The court granted the motion on April 29, mistakenly treating its decision as an interlocutory order. This court denied interlocutory review, and thereafter a proper notice of appeal was filed on May 21, 1985. Two other defendants, Linda and Thomas Treat, are not parties to the appeal. Linda Treat was the driver of the vehicle which allegedly hit plaintiff's decedent, and Thomas Treat was the owner of the vehicle.

### DISCUSSION

All facts pled are accepted as true. *McCasland v. Prather,* 92 N.M. 192, 585 P.2d 336 (Ct.App.1978). We must determine if, had decedent lived, he would have had a cause of action against defendant. NMSA 1978, § 41-2-1 (Repl.Pamp.1982). Plaintiff argues that (1) the principles expressed in *Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269 (1982), permit recognition of a common law cause of action for decedent; and (2) NMSA 1978, Section 41-11-1 (Supp. 1983), codified a cause of action for decedent. We divide the discussion into three sections: (1) New Mexico decisional law; (2) the effect of the 1983 enactment of Section 41-11-1; and (3) the effect of the 1985 amendment to Section 41-11-1.

### NEW MEXICO DECISIONAL LAW

In *Lopez v. Maez,* our supreme court changed the common law rule which precluded suit against a tavernkeeper by a third person injured as a result of the tavernkeeper's sale of intoxicating liquor to an intoxicated patron. The court held that (1) a tavernkeeper owed a duty of care to the injured third person founded upon a liquor regulation that made it unlawful to sell or serve alcohol to an intoxicated person; and (2) the sale or service of alcohol to the intoxicated patron could constitute a proximate cause of the third person's injuries. In discussing duty, the court determined that the liquor regulation and a companion statutory provision were enacted for the benefit of the public, and that violation of these provisions was a breach of duty to members of the public. In discussing proximate cause, the court rejected the common law view that the proximate cause of the injury was not the furnishing of the liquor, but the drinking of it. The court stated that the sale or service of alcohol to an intoxicated automobile driver *"may* be a proximate cause of injuries inflicted upon a third party by an inebriated driver." *Id.* at 631, 651 P.2d at 1276 (emphasis in original). The court reasoned that a "person who negligently creates a dangerous condition cannot escape liability for the natural and

probable consequences thereof, although the act of a third person contributes to the final result." *Id.* at 632, 651 P.2d at 1275. The court concluded that the "consequences of serving liquor to an intoxicated person whom the server knows or could have known is driving a car, is reasonably foreseeable." *Id.* at 632, 651 P.2d at 1276. *Lopez* did not, however, hold that the intoxicated patron had a cause of action against the tavernkeeper for injuries sustained by the patron as a result of the unlawful service or sale of alcohol.

The analysis of duty and proximate cause, in *Lopez*, was applied again in *MRC Properties, Inc. v. Gries*, 98 N.M. 710, 652 P.2d 732 (1982), under statutes prohibiting service of alcohol to minors. *See* NMSA 1978, §§ 60–7B–1(A) and –1.1 (Repl.Pamp. 1981). The court held that a third person may have a cause of action against a liquor seller for the seller's violation of the statute prohibiting service of alcohol to minors where the third person's damages were proximately caused by service of the alcohol to the minor.

Next, in *Porter v. Ortiz*, 100 N.M. 58, 665 P.2d 1149 (Ct.App.1983), this court recognized that a minor has a cause of action against a tavernkeeper who knowingly sells alcohol to the minor where the sale proximately results in the injury or death of the minor. This court extended the class of persons to whom duty was owed to include minors under Sections 60–7B–1 and –1.1. We concluded that these statutes were designed for the protection of minors as well as for the protection of members of the public.

There was no suggestion in *Porter* that a tavernkeeper's duty ran to an adult patron under Section 60–7A–16 (Repl.Pamp.1981). Section 60–7A–16, upon which plaintiff predicates the existence of defendant's duty to decedent, is a successor to the statutory provisions discussed in *Lopez*. It states: "It is a violation of the Liquor Control Act for a person to sell or serve alcoholic beverages to or to procure or aid in the procurement of alcoholic beverages for an intoxicated person knowing that the person buying or receiving service of alcoholic beverages is intoxicated." Such violation constitutes a misdemeanor. NMSA 1978, § 60–7A–25(A) (Repl.Pamp.1981).

In defining the duty owed under Liquor Regulation No. 30 (1976), which is similar in language to Section 60–7A–16, the *Lopez* court stated that "a tavernowner violates his duty *to the public* if he serves an obviously intoxicated person." 98 N.M. at 631, 651 P.2d at 1274 (emphasis added). The court did not expressly indicate whether the patron himself is to be included in "the public" group. The purpose of the Liquor Control Act, NMSA 1978, Sections 60–3A–1 to 60–8A–19 (Repl.Pamp.1981 & Cum.Supp.1985), of which Section 60–7A–16 is a part, similarly does not expressly indicate the scope of the duty under Section 60–7A–16. Section 60–3A–2 states that it is "the policy of the Liquor Control Act that the sales, service and public consumption of alcoholic beverages in the state shall be licensed, regulated and controlled so as to protect the public health, safety and morals of every community in the state * * *." We must look to separate policy considerations to define the scope of the duty.

We are aware that *Porter* recognized a minor's cause of action based upon a violation of the statutes prohibiting service of alcohol to a minor. §§ 60–7B–1 and –1.1. In *Walker v. Key*, 101 N.M. 631, 686 P.2d 973 (Ct.App.1984), however, we noted that violation of these statutes falls into a special category. In holding that the prospectivity requirements of *Lopez* did not bar a claim for relief based upon a breach of Section 60–7B–1.1, we noted that Section 60–7B–1.1 "was intended to protect minors and to protect the general public from the risk of injury caused by intoxicated minors. These factors were not present in *Lopez v. Maez*." 101 N.M. at 634, 686 P.2d at 976 (citations omitted). The immaturity and inexperience which can accompany minors' consumption of alcohol "make misuse of alcohol especially likely * * *" *Id.* at 635, 686 P.2d at 977. We concluded that "[d]ecisions in New Mexico subsequent to

*Lopez v. Maez* reflect that the legislature has determined that minors fall within a special class, and that public policy dictates that the minors and the public are entitled to be protected from those who would illegally furnish liquor to underaged persons." *Id.*

*Walker* correctly suggests that the concerns of public policy do not extend to protect an intoxicated adult patron from the results of his intoxication under Section 60–7A–16. A duty should not be imposed upon the tavernkeeper, and protection should not be extended, because the adult voluntarily created the vulnerability that is the problem. *See Allen v. County of Westchester*, 109 A.D.2d 475, 492 N.Y.S.2d 772 (1985). "To allow recovery in favor of one who has voluntarily procured a quantity of liquor for his or her own consumption with full knowledge of its possible or probable results 'would savor too much of allowing * * * [said] person to benefit by his or her own wrongful act.'" *Id.* at 480, 492 N.Y.S.2d at 776 (quoting from *Buntin v. Hutton*, 206 Ill.App. 194, 199). We cannot allow such a result.

We conclude, under our line of cases, that Section 60–7A–16 must not be read to impose a duty on the tavernkeeper to the intoxicated patron. We view the statute, ultimately, as being directed to "a broader public policy for the protection of the public at large." *Noonan v. Galick*, 19 Conn. Sup. 308, 310, 112 A.2d 892, 894 (1955). *See also Wright v. Moffitt*, 437 A.2d 554 (Del.1981). *Contra Brannigan v. Raybuck*, 136 Ariz. 513, 667 P.2d 213 (1983) (En Banc); *Majors v. Brodhead Hotel*, 416 Pa. 265, 205 A.2d 873 (1965).

■ Accordingly, we hold that because defendant owed decedent no duty of care, decedent had no cause of action at common law. Because we find no duty, we need not determine whether defendant's sale of liquor to decedent was the proximate cause of decedent's death.

## THE EFFECT OF THE 1983 LEGISLATION

■ As a response to the decisional law, the legislature enacted, in 1983, Section 41–11–1, entitled: "Relating to Alcoholic Beverages; Limiting Civil Liability in Sales of Alcoholic Beverages or Serving of Alcoholic Beverages to Guests." 1983 N.M. Laws, ch. 328, § 1. It provided:

A. No civil liability shall be predicated upon the breach of Section 60–7A–16 NMSA 1978 by a licensee, except in the case of the licensee who:

(1) sold or served alcohol to a person who was intoxicated; and

(2) it was reasonably apparent to the licensee that the person buying or apparently receiving service of alcoholic beverages was intoxicated; and

(3) the licensee knew from the circumstances that the person buying or receiving service of alcoholic beverages is [was] intoxicated.

B. No licensee is chargeable with knowledge of previous acts by which a person becomes intoxicated at other locations unknown to the licensee.

C. As used in this section, "licensee" means a person licensed under the provisions of the Liquor Control Act and the agents or servants of the licensee.

D. No person who has gratuitously provided alcoholic beverages to a guest in a social setting may be held liable in damages to any person for bodily injury, death or property damage arising from the intoxication of the social guest unless the alcoholic beverages were provided recklessly in disregard of the rights of others, including the social guest.

E. A licensee may be civilly liable for the negligent violation of Sections 60–7B–1 and 60–7B–1.1 NMSA 1978. The fact-finder shall consider all the circumstances of the sale in determining whether there is negligence such as the representation used to obtain the alcoholic beverage. It shall not be negligence per se to violate Sections 60–7B–1 and 60–7B–1.1 NMSA 1978.

The statute served, by its express terms, to limit the liability of social hosts in Subsection D, and, in Subsection E, to predi-

cate a tavernkeeper's liability for violation of Sections 60–7B–1 and –1.1 upon a negligent violation only. Subsection A dealt with the liability recognized under *Lopez*. Subsection A did not abolish a tavernkeeper's liability for breach of Section 60–7A–16. It made clear, however, that civil liability could only be imposed in the circumstance where (1) the tavernkeeper (licensee) sold or served alcohol to an intoxicated person; (2) it was reasonably apparent to the tavernkeeper that the person buying or apparently receiving service of the alcohol was intoxicated; and (3) the tavernkeeper knew from the circumstances that such person was intoxicated.

Plaintiff argues that the statute codifies a cause of action for decedent. He bases this argument on two grounds. First, he points out that in *Walker*, this court stated that the statute "did not create a new cause of action but instead was a limitation on existing rights." 101 N.M. at 636, 686 P.2d at 978. He argues that this "limitation" on a right presupposes the existence of decedent's right to bring a cause of action. Second, he argues that the 1985 amendment of the statute, 1985 N.M.Laws, ch. 191, § 1, demonstrates the statutory recognition of the cause of action in 1983. We will discuss this second point in the following section.

We agree that a limitation on a right presupposes the existence of a right. That right is now, however, the right of action for the patron. We adhere to the statement made in *Walker*, which construed the statute as a limitation on existing rights. Subsection A of the 1983 statute, which states that "[n]o civil liability shall be predicated upon the breach of Section 60–7A–16," except in the enumerated instances, does not define to whom the cause of action runs. Given this uncertainty, we construe the statute to effectuate legislative intent. *Keller v. City of Albuquerque*, 85 N.M. 134, 509 P.2d 1329 (1973). The title and the entire tenor of the statute represents a legislative intent to narrow the scope of tavernkeeper and social host liability. The statute was an obvious response to *Lopez*, *MRC Properties* and *Porter*.

Because the holdings in these cases did not recognize patron recovery for a tavernkeeper's breach of Section 60–7A–16, the statute most certainly did not. We would contravene legislative intent were we to interpret the statute as broadening the scope of tavernkeeper's liability. We cannot do this. *See Keller*. This statute did not codify a cause of action for decedent.

**THE EFFECT OF THE 1985 AMENDMENT**

The 1985 amendment to Section 41–11–1 reads as follows:

A. No civil liability shall be predicated upon the breach of Section 60–7A–16 NMSA 1978 by a licensee, except in the case of the licensee who:

(1) sold or served alcohol to a person who was intoxicated;

(2) it was reasonably apparent to the licensee that the person buying or apparently receiving service of alcoholic beverages was intoxicated; and

(3) the licensee knew from the circumstances that the person buying or receiving service of alcoholic beverages is [was] intoxicated.

B. No person who was sold or served alcoholic beverages while intoxicated shall be entitled to collect any damages or obtain any other relief against the licensee who sold or served the alcoholic beverages unless the licensee is determined to have acted with gross negligence and reckless disregard for the safety of the person who purchased or was served the alcoholic beverages.

C. No licensee is chargeable with knowledge of previous acts by which a person becomes intoxicated at other locations unknown to the licensee.

D. As used in this section:

(1) "licensee" means a person licensed under the provisions of the Liquor Control Act and the agents or servants of the licensee; and

(2) "intoxicated" means the impairment of a person's mental and physical faculties as a result of alcoholic beverage use so as to substantially diminish that

person's ability to think and act in a manner in which an ordinary [ordinarily] prudent person, in full possession of his faculties, would think and act under like circumstances.

E. No person who has gratuitously provided alcoholic beverages to a guest in a social setting may be held liable in damages to any person for bodily injury, death or property damage arising from the intoxication of the social guest unless the alcoholic beverages were provided recklessly in disregard of the rights of others, including the social guest.

F. A licensee may be civilly liable for the negligent violation of Sections 60–7B–1 and 60–7B–1.1 NMSA 1978. The fact-finder shall consider all the circumstances of the sale in determining whether there is negligence such as the representation used to obtain the alcoholic beverage. It shall not be negligence per se to violate Sections 60–7B–1 and 60–7B–1.1 NMSA 1978.

G. A licensee shall not be held civilly liable pursuant to the provisions of Subsection F of this section except when:

(1) it is demonstrated by the preponderance of the evidence that the licensee knew, or that a reasonable person in the same circumstances would have known, that the person who received the alcoholic beverages was a minor; and

(2) licensee's violation of Section 60–7B–1 or 60–7B–1.1 NMSA 1978 was a proximate cause of the plaintiff's injury, death or property damage.

H. No person may seek relief in a civil claim against a licensee or a social host for injury or death or damage to property which was proximately caused by the sale, service or provision of alcoholic beverages except as provided in this section.

Plaintiff acknowledges that the 1985 amendment has no application to this case, which was pending on June 14, 1985, the date the amendment took effect. N.M. Const. art. IV, § 34. Plaintiff points out that Subsection B of the 1985 amended version allows recovery for a patron against a tavernkeeper upon a showing of the tavernkeeper's gross negligence or reckless disregard for the safety of the patron in the sale or service of alcohol. From this, plaintiff concludes that "logic dictates that it is plaintiff's cause of action for ordinary negligence herein which the legislature intended to restrict."

Our interpretation of the 1983 statute disposes of plaintiff's argument concerning the implications of the 1985 amendment. Subsection B of the 1985 amendment did not modify an existing cause of action for the patron because no cause of action was recognized under the 1983 statute. Therefore, the amended Subsection B, in reality, creates a cause of action for a patron based upon the tavernkeeper's gross negligence or reckless disregard for the safety of the patron in the sale or service of alcohol.

Our decision today has a limited application to incidents arising before June 16, 1985. For all incidents arising on or after that date, Subsection B, which is contained in the presently constituted version of Section 41–11–1, controls. *See* 1986 N.M. Laws, ch. 100, § 1.

The order of dismissal is affirmed. Appellate costs to defendant.

IT IS SO ORDERED.

BIVINS and MINZNER, JJ., concur.